Eugene Henry LOVE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–81–0006–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 25, 1981.

Kahn & Maierson, Jeffrey G. Malm, Houston, for appellant.

John B. Holmes, Dist. Atty., Timothy Taft, Asst. Dist. Atty., Houston, for appellee.

Before EVANS, C.J., and DOYLE and STILLEY, JJ.

EVANS, Chief Justice.

The appellant attempted to purchase a topcoat at a Sakowitz store, using a Sakowitz credit card that did not belong to him. After a jury trial, he was convicted of credit card abuse, and sentenced by the court to seven years imprisonment.

The appellant first contends that the trial court erred in overruling his motion for directed verdict, arguing that there is a fatal variance between the evidence and the indictment. The appellant does not contend that the indictment failed to charge him with the crime, but rather that the elements of the crime alleged in the indictment were not proven at trial.

The indictment charged the appellant with having used a Sakowitz credit card, knowing that the card had not been issued to him and with the intent to obtain "property and service" fraudulently. The State offered proof that the appellant attempted to purchase "property" with the card, but did not offer proof that the appellant intended to obtain "service" by use of the card. Thus, the appellant argues that the second element of intent was not established, resulting in a fatal variance between the indictment and the proof. The appellant relies upon *Weaver v. State*, 551 S.W.2d 419 (Tex.Cr.App.1977) in which an indictment for aggravated assault described the weapon used as a "Ruger", while the evidence showed the weapon to be a "Luger." It was held that this variance was fatal to the State's case, and the conviction was reversed.

■ As a general rule, non-essential allegations in an indictment will be treated as surplusage and need not be proven. *Collins v. State*, 500 S.W.2d 168 (Tex.Cr.App.1973). However, this rule applies only to those items which are not descriptive of that which is legally essential to the validity of the indictment, and where an item necessary to be mentioned in the indictment is described with unnecessary particularity, it has been held that the descriptive allega-

tions must be proven. *Weaver v. State supra; Burrell v. State*, 526 S.W.2d 799, 802 (Tex.Cr.App.1975).

■ In the case at bar it was necessary only that the State allege a fraudulent intent on the part of the appellant to obtain either "property" or "services" by use of the credit card. Proof of either intent was a sufficient basis to support the conviction, and the words "and service" may be disregarded without affecting the charge against the appellant. Thus, the additional words constituted harmless surplusage.

The appellant next contends that the trial court erred in overruling his objection to the court's charge because there was no instruction on circumstantial evidence. In support of this contention, he argues that there was no direct evidence of his "knowing" use of the credit card.

■ There was testimony that the appellant presented the credit card to the State's witness, a Sakowitz salesman, and that the appellant signed a sales slip for the topcoat. Where the culpable mental state of the accused is the only element of the offense not proved by direct evidence, it is unnecessary to charge the jury on circumstantial evidence. *Glover v. State*, 566 S.W.2d 636, 638 (Tex.Cr.App.1978).

In his third ground of error the appellant contends the trial court erred in failing to grant his motion for mistrial due to the jury's inability to reach a verdict. He asserts that the trial court should have declared a mistrial after the jury had deliberated for eight hours and fifty minutes and had three times sent back notes to the judge asking to be dismissed because they were unable to reach a verdict.

■ Whether a jury should be dismissed and a mistrial ordered is a matter within the sound discretion of the trial court. In determining such matter it is appropriate for the court to consider the amount of time the jury has deliberated. *Patterson v. State*, 598 S.W.2d 265 (Tex.Cr.App.1980).

The record reflects that the trial in this case lasted approximately two hours and

that the jury deliberated for approximately six hours.

 The record does not reflect that the trial court abused its discretion in refusing to dismiss the jury and to declare a mistrial. The period of time the jury deliberated was not so disproportionate to the length of the trial as to require the jury's dismissal and a declaration of mistrial. Compare *Holman v. State*, 474 S.W.2d 247 (Tex.Cr.App.1971) (one hour punishment hearing followed by eight hour jury deliberation); *Arrevalo v. State*, 489 S.W.2d 569 (Tex.Cr.App.1973) (eight hour jury deliberation following a short trial) Neither did the trial court's actions in directing the jury to proceed with its deliberations constitute reversible error. *Potter v. State*, 481 S.W.2d 101 (Tex.Cr. App.1972); *Garcia v. State*, 522 S.W.2d 203 (Tex.Cr.App.1975); *Arrevalo v. State, supra.*

Appellant contends in his last point of error that the court's instruction to the jury, after receiving their third notice of being deadlocked, suggested to the jurors voting against conviction that they should not adhere to their individual opinions. The trial court instructed the jury as follows:

"You are instructed that this case has been ably tried by experienced lawyers, and in the interest of justice, if you could end this litigation by your verdict, you should do so.

"I don't mean to say by that any individual man or woman on the jury should yield his or her conscience and positive conviction, but I do mean that when you are in the jury room, you should discuss this matter among yourselves carefully and listen to each other, and try, if you can, to reach a conclusion on the issues. It is the duty of jurors to keep their minds open and free to every reasonable argument that may be presented by fellow jurors that they may arrive at a verdict which justly answers the consciences of the individuals making up the jury. A juryman or woman should not have any pride of opinion, and should avoid hastily forming or expressing an opinion. He or she should not surrender any conscientious views founded upon the evidence unless convinced by his or her fellow jurors of his or her error.

"I am satisfied, ladies and gentlemen, that you have not deliberated sufficiently so that, in good conscience, I can accept any report that you cannot arrive at an agreement. Accordingly, I return you to your deliberation."

This instruction did not coerce the jurors to vote against their prior convictions. The one case relied upon by appellant, *Golden v. State*, 89 Tex.Cr.R. 525, 232 S.W. 813 (1921), is distinguishable from the facts in the present case. In that case the trial judge aimed his remarks specifically at two jurors who had voted for acquittal. In the case at bar the court's instructions were addressed to the jury as a whole, and the trial court's instruction did not reflect on the jurors' individual abilities or the reasons for their hesitation. Thus, the instructions left each juror the discretion of reaching a decision on the basis of his or her own conscience.

The judgment of the trial court is affirmed.